Havnes, J.
A petition in error is filed in this case to reverse the judg *454 merit of the court of common pleas. It is a case where Joseph Frick was plaintiff and the railroad company was defendant. The action was brought in the court below for the purpose of recovering damages from the defendant for the loss of an arm, from an injury which plaintiff had sufered while in the employ of the defendant company. Trial was had, and judgment was rendered for a certain sum in favor of the plaintiff and against the defendant. A motion for a new trial was filed, in which the grounds set forth for a new trial are: That the verdict was not sustained by sufficient evidence; for several errors of law occurring at the trial, to the commission of each and every one of which the defendant at the time excepted; and for other manifest errors apparent upon the face of the record. The petition in error sets out as causes of ertor: that the court erred in overruling the motion of plaintiff in error fora new trial; that the facts set forth in the petition are not sufficient in law to maintain the said action against plaintiff in error. There are some other points, but these are the main ones.
The principal point argued is, that the petition in error does not set forth a cause of action in favor of the plaintiff below against the defendant. The main portions of the petition are as follows:
“Plaintiff further says, that on the 26th day of August, 1890, he was an employe of the said defendant in the capacity of a brakeman on freight trains, Plaintiff further says, that it was the duty of the said defendant to have Billed the open space between the ties projecting outside of the rails of its said railroad, and thereby protect its employes engaged in the work of switching, coupling and uncoupling cars, against the danger of having their feet caught in such open spaces, and being thrown down and run over and crippled or killed by the cars that they were switching, coupling or uncoupling. Plaintiff further says, that the said defendant, at a point near the station of Stewartsville, a station on the line of said railroad aforesaid, about three or four hundred feet north of the place where *455 the New York, Chicago & St. Louis Railroad crosses the railroad of said defendant, the said defendant, wrongfully, carelessly, negligently and unlawfully omitted and neglected to fill the spaces between the ties on the west side of said railroad, and for a long time prior to, and at said date, permitted the spaces between the said ties to remain open, unprotected, and unfilled at the said point, whereby its employes, undertaking to couple or uncouple cars as aforesaid, were liable to have their feet caught therein, and thrown forward and injured by passing trains upon the said tracks; all of which was well known, or by the use of reasonable care, might have been known to the said defendant, and was unknown to this plaintiff.”
And this petition further avers, that while at this point in question, engaged in the duty of uncoupling a car, he stepped into one of those spaces, was thrown forward upon the track without any fault on his part, and suffered an injury which caused the loss of his right arm,
The defendant, for answer,
“Admits that the open space between the ties projecting outside of the rails of its said railroad, was unfilled at the time of the accident in the petition alleged, and had never-been filled since the construction of the railroad at the point of said accident, or at any other point along the line of said railway. It further admits, that the plaintiff, while engaged in switching cars in a moving train at Stewartsville, was so injured, that his left arm was amputated. But defendant denies each and all the other allegations of the petition not hereinbefore specifically admitted to be true.”
A reply was filed, denying all the new allegations in the answer.
The case proceeded to trial, and evidence was offered as to the condition of the road-bed at the point in question. Evidence was also offered tending to show that at other points upon the line of the road, near the stations, and at the points where ordinarily the brakemen would be occupied *456 in coupling or uncoupling cars, or switching cars, the spaces between the ties outside of the rails were filled. Evidence was offered on the part of the defendant, tending to prove that that was not so; that the plan adopted by the owners of. the road in constructing it was, in ballasting, to fill the space between the track to a point at the center even with the top of the ties, and then to slope that off a little as they approached the rail on either side, and as they neared the rail, sloping a little more, so that it would leave a space under the rail of about two inches, passing down to the end of the tie — it was about 22 inches from the rail to'the tie— or near the bottom of the tie, and extending on that on a slope; and this, it was averred, and the testimony was offered to show, was done for the purpose of enabling the water to run off the track speedily, so as to keep the track dry and prevent the ties from rotting, and water accumula.ting so as to make the track soft. And testimony was offered on the part of the defendant to show that that was the condition, of the track at all points, including the points where the switching was done, as well as upon the general line of the tracks.
The evidence being closed, the case was submitted to the jury upon the charge of the court, without any- requests being made by either party, so far as the record discloses, and without any exceptions being taken to the charge by either party. In that charge the court submitted the question in regard to the condition of the track or road bed of the defendant in the following language:
“The burden of proof to show negligence on the part of the railroad company is upon the plaintiff. Negligence, which is the gist of the action, is not to -be presumed, but must be proven. There is no presumption that the railroad company was negligent, from the mere fact that the plaintiff was injured while he was in the employ of the company, or while he was performing his duty as an employe of the company. To entitle the plaintiff to recover damages, it *457 is incumbent upon him to show affirmatively, and by a fair preponderance of evidence, that the company was negligent in the respect complained of; that is, in omitting to fill the space between the ties outside of the rails at the place where the injury occurred; and it is incumbent upon the plaintiff to show, by a fair preponderance of evidence, that his injury resulted from such alleged negligence. He cannot recover if the injury was produced by any cause for which the railroad company in law is not responsible. He cannot recover if, by his own want of care, he contributed in any degree to his injury. Now, if the plaintiff received his injury in consequence of the negligence of the company, under the rules which I shall give you, and was himself free from any fault contributing to the injury, then he is entitled to recover such damages as the proof shows he has sustained; but if the injury was not caused by negligence on the part of the railroad company, or if the plaintiff, by his cwn want of care, contributed to the injury, then he is not entitled to recover, and in that case your verdict must be for the defendant.”
“The two principal questions,then, in the case which you are to determine from the evidence, are:
“First: — Whether the railroad company was negligent in omitting to fill the space between the ties at the place of the injury, and whether the injury was caused by such negligence.
“Second: — Whether the plaintiff was himself free from fault contributing to the injury.
“The relation between the plaintiff and defendant was that of master and servant, and the law imposes certain duties upon each of the parties to that relation, both upon the master and also upon the servant. It was the duty of the railroad company, the master, to use ordinary and reasonable care in providing for its employes a safe and suitable place in which to do their work; and ordinary and reasonable care is such as ordinarily prudent persons or corporations are assumed to exercise under the same or similar circumstances. The company is not required to use extraordinary care, nor is it required to do that which is unreasonable or impracticable, taking into consideration all the circumstances. The company does not guarantee the abso *458 lute safety of its'employes; it is notan insurer of its employes; it is required only to use what would be reasonable care under all the circumstances of the case.
“You will first determine from the evidence, how the injury occurred. Did it occur by the plaintiff having his foot caught between the ties^ — in the spaces between the ties; — while attempting to uncouple cars; or did it occur in some other way? If it occurred as alleged by the plaintiff, did the company fail to use reasonable and ordinary care in omitting to fill the spaces between the ties at the place where the injury occurred? Now, gentlemen, that is a question of fact purely, which you must determine from all the evidence in the case. Everything must be considered; the place where the injury occurred; all the objects and purposes to be accomplished in the construction of the defendant’s road bed; the duty of the company to its employes; the safety of the road bed for trains to pass over it, and what would be practicable and reasonable in view of all the circumstances of the case. You may consider whether or not the road bed of the defendant at the point of the injury, was constructed in-accordance with the regular mode of construction at similar places adopted by the company, if there was such a mode of construction. If the road bed at the place of the injury was constructed in accordance with such regular mode, and the plaintiff knew this, or might have known it by the exercise of reasonable care, then the company is not chargeable with negligence. But if there was no regular mode of construction at similar places, or if the mode of construction at the place of the injury was materially different from such regular mode of construction, then you may take that fact into consideration in connection with all the other evidence, in determining whether there was any negligence. The inquiry is: whether, under all the circumstances and all the facts, the company did, or did not, use reasonable care in omitting to fill these spaces at the place of the injury.”
To this charge, as I have stated, no exception was taken. The question which was very fully argued here, by counsel on behalf of plaintiff in error, is this: He asserts in substance, as a proposition of law— I will not undertake to *459 give his words — the right of the company to construct its road in conformity to a plan of its own~choosing, and that those who take service with it, take it with the risk incident to that service. And he avers that the [petition does not state a cause of action, because there is*no averment that there was any mistake in the plan, but simply|that the plan did not provide for the filling of the spaces^between these ties.
The question, in the form in which it is presented, is rather new to us. We have endeavored to give very careful attention to the arguments that have been advanced and to the authorities that have been cited. An authority"nearly approaching the position that is taken by plaintiff, will be found in 122 U. S., Tuttle v. Detroit, Grand Haven & Milwaukee Railway. In the opinion of the court, which is found on page 194, it appears that at Detroit, in the yards of the company, there was a curve called a boot-jack, which was a very sharp curve, and that the plaintiff, who was an •old employe, attempted to couple cars that were passing around that curve, and he approached them on the concave side. The cars, when they came together, did so in such a way that the draw-bars did not meet, and the cars pressed together. Judge Bradley says:
4 ‘ We have carefully read the evidence presented by the bill of exceptions, and, although it appears that the curve was a very sharp one at the place where the accident happened, yet we do not think that public policy requires the courts to lay down any rule of law to restrict a railroad company as to the curves it shall use in its freight yards and depots, where the safety of passengers and the public is not involved; much less should it be left to the vague and uncertain opinions of juries to determine such an engineering question. The interest of railroad companies themselves is so strongly in favor of easy curves as a means of facilitating the movement of their cars, that it may well be left to the discretion of their officers and engineers in what manner *460 to construct them for the proper transaction of their business in the yards, etc. It must be a very extraordinary case, indeed, in which their discretion in this mattér should be interfered with in determining their obligations to their employes. The brakemen and others employed to work in such situations must decide for themselves whether, they will encounter the hazards incident thereto; and if .they der cide to do so, they must be content to assume the risk.”
He refers to the case of Randall v. Baltimore & Ohio R. R., 109 U. S., where it is said:
“A railroad yard, where trains are made up, necessarily has a great number of tracks and switches close to one another, and any one who enters the service of a railroad corporation connected with the moving of trains, assumes the risk of that condition of things.”
He further says, in reference to this particular case:
“It is for those who enter into such employments to exercise all that care ar d caution which the perils of the business in each case demand. The perils of the present case, arising from the sharpness of the curve, were seen and known. They were not like the defects of unsafe machinery which the employer has neglected' to repair; and which his employes have reason to suppose is in proper working condition. Everything was open and visible, and the deceased had only to use his senses and his faculties to avoid the dangers to which he was exposed. ' One of these dangers, was that of the draw-bars slipping and passing each other when the cars were brought together. It was his duty to look out for this,and avoid it. The danger existed only on the inside of the curve. This must have been known to him. It will be presumed that, as an experienced brakeman, he did know it; for it is one of those things which happen,.in the course of his employment, under such conditions as existed here.” , ■
A case was cited in 39 Fed. Rep., 419, in which Judge Colt, of the Circuit Court, delivered an opinion. The question arose over an injury received by a freight conductor, causing his death, which injury resulted from the negli *461 gence of defendant company in its construction of a sidetrack at a certain point, the claim being, that the side-track was defectively constructed. It seems that the accident was caused by a collision of a freight train in charge of a conductor with a freight car which had drifted from a sidetrack, and that the company failed to employ stop blocks or proper means for blocking the cars when upon the side-track. Upon the trial of the case before a jury, the court had instructed the jury to say, “whether the siding was constructed in accordance with scientific railroad construction, and whether, in its construction, with respect to stop blocks, or to securities against a car being blown out on to the mam track, the company exercised ordinary care.” Before the case came up on a motion for a new trial, this decision had been made which is reported in 122 U. S., and following that the Circuit Judge granted a new trial for the error in the charge which I have just read. So it seems that the judge had originally started out with the opinion that it was a question of the exercise of ordinary care on tbepart of the railroad company.
There is an instructive case to be found in 8 Allen, 441, which we think takes a different view of the question. In that case, the defendant was sued for an. injury that had occurred to one of its servants who had endeavored to uncouple the cars of a train at a point near where its railroad crossed the highway, and near its intersection with another railroad. It was shown that certain planks had been laid down thereat a certain time that had become defective, and that there was a hole in them through which the plaintiff stepped while endeavoring io uncouple the cars. So .that the question arose, perhaps, in part, as to .whether the defendant had been negligent in keeping up the plank as originally laid, and the discussion of the question has much that is interesting. The judge delivering the opinion on behalf of the Supreme Court, says:
*462 “But, in the next place, a decisive answer to this ground of defense is, that it does not appear that the defect in the road, which was the proximate cause of the accident, was the result of any such negligence of a servant of the defendants, that they would be excused from liability. It was caused by a want of repair in the superstructure or roadbed between the tracks of the defendant’s road, where it crossed the highway. In other words, the defendants neglected to keep a portion of their road, where it was necessary for the plaintiff to go in the discharge of his duties, in a safe and suitable condition, so that he could not pass over it without incurring the risk of injury. Now, while it is true, on the one hand, that a workman or servant, on entering into an employment, by implication agrees that he will undertake the ordinary risks incident to the service in which he is engaged, among which is the negligence of other servants employed in similar service by the same master, it is also true, on the other hand, that the employer or master impliedly contracts that he will use due care in engaging the service of those who are reasonably fit and competent for the performance of their respective duties in the common service, and will also take due precaution to adopt and use such machinery, apparatus, tools, appliances and means, as are suitable and proper for the prosecution of the business in which his servants are engaged, with a reasonable degree of safety to life and security against injury.
“Thus an owner of a steamboat would be liable to an engineer or workman in his employment for an injury occasioned by the use of a boiler which was defective and insufficient. So a manufacturer would be subjected to a like liability by the' use of imperfect or badly constructed machinery. And in like manner the proprietors of a railroad would be responsible for accidents happening by tracks improperly laid, orswicthes which are not constructed to operate with regularity and precision. The distinction on which this rule of law is founded is an eminently wise and just one. ’’
Then he states the law as to master and servant, and proceeds:
“But it is otherwise where injuries to servants or workmen happen by reason of improper and defective machinery *463 and appliances used in the prosecution of a work. The use of these they could not foresee. The legal implication is, that the employer will adopt suitable instruments and means with which to carry on his business. These he can provide and maintain by the use of suitable care and oversight; and if he fails to do so, he is guilty of a breach of duty under his contract, for the consequences of which he ought, in justice and sound reason, to be responsible. Such we understand to be the rule of law, and the principles on which it is founded are now fully established by authority.”
A case is also found in . 67 Texas, and that case more nearly approximates this. It appears that a railway company was constructing a railroad, and had constructed its track so that it could use it for a certain distance, and was running cars over it for the purpose of constructing its road on beyond. It had not opened the road for general traffic, but was using it with a locomotive that had a cow-catcher on it that was hung a little low, or hung a little out of plumb in some way, so that it went very near to the ties. The road bed was not ballasted at all. It further appears that the plaintiff, who was a brakeman, was engaged in attempting to uncouple the cars as they came near the end of the road, and in stepping along, he sometimes stepped in the space between the ties instead of stepping upen them; and at the time of the accident in question in the suit, he had stepped between the ties and caught his foot, and being satisfied that he would be run over by the train, be threw his body to one side and attempted to pull his foot out, and would have accomplished it but for the fact that the cowcatcher at that moment came along, and being depressed in the manner I have stated, there was not room for his foot to pass-out, and he was badly injured. Now, the supreme court of that state say, that the company was bound to have its road bed ballasted and fixed up before it undertook to use the road, even although it was in process of construction. It may be an extreme case, but is in line, it seems, *464 with the doctrine that has been followed by some of the courts with regard to the duties of railroad companies.-
Quite a number of other cases were cited, and have been discussed. They relate, very largely, to injuries that have resulted from the use of some form of machinery or appliances of that class, in regard to which there is no question as to the liability of a railway company, provided it has been guilty of negligence, and I shall not revert to those further. There is one case, however, in regard to which there was a discussion as to the manner in which the platform of a railway depot was constructed; but that is a discussion of a question of evidence in regard to the condition of affairs at that point rather than an enunciation of any general principles that will help us in this case.
Now, the judge of the court below proceeded upon the theory that the railway company, plaintiff in error here, was bound to use reasonable and proper care in the construction of its tracks at these points, for the purpose of securing the safety of its employes in the performance of duties which they are called upon to perform there, to-wit: —that of switching and coupling and uncoupling cars. To that no exception, as I have said, was taken, The case was submitted upon that theory to the jury, with a very full statement of the rule of law in that regard, and the verdict was returned upon that without any exception. Assuming that the question that is presented here is properly raised, or that is sought to be argued here by the parties, may be argued here at this time, based upon the facts stated in the petition, we are inclined to the opinion that the law was properly stated by the trial court. The question is not one of the bare right of the railway company, to say as to the manner in which its tracks shall be constructed. The company was bound to use reasonable and proper care at these points, to so fill the spaces between the rails that persons who were engaged in coupling and uncoupling cars might *465 have reasonable assurance.-of safety..in passing along in the. performance of their duties. The general doctrine that they have the right, as a general rule, to prescribe the manner in which their track shall be constructed, we do not now discuss. It is only at these particular points — at the points near the switches, where it is known, and must be known to them, that the track will be used by brakemen for the purpose of coupling and uncoupling cars, as they pass along the train.
It is said, that this accident occurred jyhile the train was in motion, and that it was negligence on the part' of the brakeman to endeavor to uncouple the cars when the train was in motion. As a general rule, perhaps, that may be true, but it appears from the testimony here, which is not questioned, that in order to get the proper slack to enable the brakeman to uncouple these cars, it was necessary to have the train in motion; and it appears that while it was in motion, proceeding, perhaps, slowly, that he was passing along, leaning towards the car, and his foot caught in the track, or under the end of the ties; that he was thrown down with his left arm upon the track, and was run over. In doing that while the train was in motion, we do not think that the brakeman was negligent. We think that the brakeman was in the performance of his duty, and in the place he ought to have been, and was doing his work in a careful and prudent manner.
It is said, as a second ground upon which the judgment should be reversed, that the plaintiff himself was guilty of negligence. That question has been argued and discussed by counsel with a good deal of earnestness. The testimony shows that the plaintiff had been in the employ of the corppany for some months, and that he had been out of the employ, and absent a month, for some purpose, and had returned the day before the accident happened, and had started out upon this trip, leaving Findlay in the morning,com *466 ing north. He testifies himself, that he had never switched at this point before. He furnishes the testimony of some of his co-employes, who testify that they had run with him all this spring, and that he had never done any switching at this point. It was said that he was usually rear brakeman, and his duty was to set brakes when coming to a station, and he helped load and unload freight, while the switching was done by the foreman or forward brakeman. On this particular day, the foreman was alone, the conductor being absent for some reason, and he was ordered by the person who was acting as conductor to make this switching, and he passed from the rear end of his^train along the length of the train up to the front; that he came to the seventh car from the engine, and at that point he was to set out a certain car, which he uncoupled at that point, and the train moving forward with the seven cars,threw this car upon the switch and left it. He was also to take two other cars that’stood on a side-track, which was also a connecting track with the road that they crossed at that point. He got those cars, and in getting them out he had to take out quite a number of other cars — sixteen,I think they were. He pulled them all out, and backed down to his own train, and uncoupled the two cars that he was to connect to the train. He started to go ahead, and was attempting to uncouple the cars that were to go back upon the side-track at the time the injury occurred, and was upon the west side of the main track. It is said that he passed up to that point before that time that morning. It would seem as if he ought to have been more familiar with this point than he was, or than the testimony of his co-employes would tend to show that he was. But that question has been submitted to the jury, the witnesses themselves being present in court, and has been passed upon by the jury; and we are not permitted, under the rules that should govern this court in passing on evidence that has been passed on by a jury below, to *467 say that the jury have erred, or have been governed by improper motives, in arriving at the conclusion that the plaintiff himself was not guilty of negligence. In that connection it should be remembered that the duty which he was called upon to perform, was one that occupied his mind and his attention, and that it was very difficult for him to give attention to the coupling and uncoupling of cars at that point, and protect his hands, and at the same time watch very closely the place where he should put his feet; and that we think should have an important bearing upon the question, as to whether he was guilty of negligence in not observing greater caution in regard to the place where he should walk. It seems that in attempting to step on the ties, instead of stepping on them he stepped between them. Tt should be remembered that these ties are nearly the whole width of a tie above the grade. The rails themselves are two inches above the ground; so that if he should happen to turn a little towards the car, his toes pointing in, and we may say towards the car, he would have been very liable to have had his toes caught under the rail itself, or at the point where the rail and tie would cross each other. In looking this matter over, we are not prepared to say ourselves, that the plaintiff was guilty of negligence, even if the case were an original one before us. Certainly we are not prepared to say, and cannot say, that the jury have been guilty of prejudice or passion, or anything that would entitle the parties to a new trial, in coming to the conclusion that the plaintiff was not guilty of negligence.
Doyle, Scott & Leiois, Attorneys for Plaintiff in Error.
Scribner & Hurd, Attorneys for Defendant in Error.
For these reasons, we think that the judgment of the court below should be affirmed, but reasonable cause may be certified.
(Note: — Affirmed in the Supreme Court, 51 Ohio St., 575.)